

# Your Missouri Courts

Search for Cases by: Select Search Method... ▼

**Judicial Links**  |  **eFiling**  |  **Help**  |  **Contact Us**  |  **Print**          GrantedPublicAccess  **Logoff APBLAISDELL**

## 2122-CC09346 - ANGELIA SCOTT V ST LOUIS UNIVERSITY HOSPITAL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |
FV

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ● Descending  ○ Ascending

Display Options: All Entries ▼

---

**10/13/2021** ☐ **Jury Trial Scheduled**
    Scheduled For: 03/21/2022;  9:00 AM ;  MICHAEL FRANCIS STELZER;  City of St. Louis

**09/23/2021** ☐ **Summons Issued-Circuit**
    Document ID: 21-SMCC-13213, for ST LOUIS UNIVERSITY HOSPITAL.

☐ **Filing Info Sheet eFiling**
    **Filed By:** MARY MADELINE JOHNSON

☐ **Note to Clerk eFiling**
    **Filed By:** MARY MADELINE JOHNSON

☐ **Pet Filed in Circuit Ct**
    Petition for Damages; Exhibit A - Notice of Right to Sue.
    **Filed By:** MARY MADELINE JOHNSON
    **On Behalf Of:** ANGELIA SCOTT

☐ **Judge Assigned**

---

Case.net Version 5.14.24                    Return to Top of Page                    Released 09/07/2021

EXHIBIT

A

**2122-CC09346**

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS, MISSOURI

| | | |
|---|---|---|
| ANGELIA SCOTT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| | ) | |
| ST. LOUIS UNIVERSITY HOSPITAL | ) | REQUEST FOR JURY TRIAL |
| | ) | |
| Serve at: | ) | |
| 1201 S. Grand Boulevard | ) | |
| St. Louis, MO 63104 | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Angelia Scott ("Plaintiff") and for her Complaint for Damages against Defendant St. Louis University Hospital, ("Defendant"), and alleges and states as follows:

## Parties and Jurisdiction

1. Plaintiff is a citizen of the United States, residing in St. Louis, Missouri, and at all times pertinent to this Complaint for Damages was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(f) et seq. ("Title VII").

2. Defendant is a research and academic medical center located in St. Louis, Missouri and is affiliated with the St. Louis University School of Medicine.

3. Defendant receives federal funding through various academic and other programs, which make it subject to the prohibitions of Title VII and the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001 *et seq.* ("ACA").

4. Defendant employs at least 15 employees within the State of Missouri and the United States.

1

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

5. Defendant continuously operates a hospital and medical clinics within the State of Missouri with its headquarters located at 1201 S. Grand Boulevard, St. Louis, Missouri.

6. Defendant was at all times pertinent to this Complaint for Damages, an "employer" within the meanings of the Title VII.

7. The claims within this Complaint are brought under Title VII, a federal statute, and the ACA, a federal statute.

8. Some, if not all, of the alleged unlawful employment practices took place in the State of Missouri, within the City of St. Louis.

9. Plaintiff and Defendant are both "residents" of St. Louis, Missouri within the meaning of RSMo. § 508.010.

10. Jurisdiction and venue are proper in this Court pursuant to RSMo. § 508.010.

<u>**Administrative Procedure and Procedural Posture**</u>

11. On or about July 28, 2020, Plaintiff timely filed a Charge of Discrimination dually with the Equal Employment Opportunity Commission ("EEOC") and Missouri Commission on Human Rights ("MCHR") alleging Defendant discriminated against her by association on the basis of her son's sex by refusing to provide Plaintiff basic health insurance coverage benefits that would cover the treatment of her son's medical condition of gender dysphoria.

12. On or about June 30, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue on Plaintiff's Title VII claim. A copy of said Notice is attached hereto as Exhibit A and incorporated herein by reference.

13. Plaintiff's Complaint is filed within ninety (90) days of the issuance of the EEOC's Notices of Right to Sue.

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

14. The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

15. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

<u>**General Allegations Common to All Counts**</u>

16. Gender identity refers to an individual's fundamental, internal sense of being a particular gender. It is an essential element of human identity that everyone possesses. Gender identity is innate, has biological underpinnings, and is fixed at an early age.

17. An individual's sex is generally assigned solely on the basis of the appearance of external genitalia at the time of birth. External genitalia are but one of several sex related characteristics and are not always indicative of a person's sex. Other sex related characteristics, such as chromosomes, hormone levels, internal reproductive organs, secondary sex characteristics, and gender identity, are typically not assessed or considered during the assignment of sex at birth.

18. Where an individual's gender identity does not match that individual's sex assigned at birth, gender identity is the critical determinant of sex. A scientific consensus recognizes that attempts to change an individual's gender identity to bring it into alignment with the sex assigned at birth are ineffective and harmful.

19. For transgender people, an incongruence between gender identity and the body's other sex characteristics can result in gender dysphoria—i.e., a feeling of clinically significant

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

distress and discomfort born out of experiencing that something is fundamentally wrong. Gender dysphoria is a medical condition recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition; the World Health Organization's International Classification of Diseases, which is the diagnostic and coding compendia for medical professionals; and by other leading medical and mental health professional groups, including the American Medical Association ("AMA") and the American Psychological Association ("APA").

20. In addition to clinically significant distress, gender dysphoria can also result in severe anxiety, depression, and suicidal ideation or suicide if not adequately treated.

21. Untreated gender dysphoria often intensifies with time. The longer an individual goes without adequate treatment, the greater the risk of severe harms to the individual's health.

22. Gender dysphoria can be treated in accordance with internationally recognized Standards of Care formulated by the World Professional Association for Transgender Health ("WPATH"). These Standards of Care are recognized as authoritative by national medical and behavioral health organizations such as the AMA and APA, which have called for an end to exclusions of gender confirming care from health insurance plans.

23. The process by which transgender individuals come to live in a manner consistent with their gender identity, rather than the sex they were designated at birth, is known as gender transition. The ability to live in a manner consistent with one's gender identity is critical to the health and well-being of transgender individuals and is a key aspect in the treatment of gender dysphoria.

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

24. The steps that transgender individuals take to transition are individualized, but typically include social, legal, and medical transition.

25. Social transition entails a transgender individual living in accordance with their gender identity in all aspects of life. For example, for a man who is transgender (designated female at birth), social transition can include wearing typically male attire, using male pronouns, and otherwise living openly as a man in all aspects of everyday life.

26. Legal transition involves steps to formally align a transgender individual's legal identity with their gender identity, such as legally changing one's name and updating the name and gender marker on their driver's license, birth certificate, and other forms of identification.

27. Medical transition, a critical part of transitioning for many transgender individuals, includes treatments that bring the sex-specific characteristics of a transgender individual's body into alignment with their gender identity, such as counseling to obtain a diagnosis of gender dysphoria, hormone replacement therapy, or surgical care.

28. Hormone replacement therapy involves taking hormones for the purpose of bringing one's secondary sex characteristics into typical alignment with one's gender identity. Secondary sex characteristics are bodily features not associated with external and internal reproductive genitalia (primary sex characteristics). Secondary sex characteristics include, for example, hair growth patterns, body fat distribution, and muscle mass development. Hormone replacement therapy can have significant masculinizing or feminizing effects and can assist in bringing a transgender individual's secondary sex characteristics into alignment with their true sex, as determined by their

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

gender identity, and therefore is medically necessary care for transgender people who need it to treat their gender dysphoria.

29. Gender confirming surgical care or treatment—also known as gender confirmation surgery or "sex reassignment" surgery—refers to any surgical procedure undertaken by a transgender individual to better align their primary or secondary sex characteristics with their gender identity. Such surgical care can include but is not limited to vaginoplasty, phalloplasty, hysterectomy, gonadectomy, mammoplasty, and mastectomy. These treatments deliberately change sex characteristics for the purpose of treating gender dysphoria.

30. Surgical care is medically necessary for transgender people who need it to treat their gender dysphoria.

31. An established body of medical research demonstrates the effectiveness and medical necessity of gender dysphoria treatment, including counseling, hormone therapy, and surgical treatment. Health care experts have recognized that such treatments are not "cosmetic," "elective," or "experimental." Rather, such treatments are safe, effective, and medically necessary treatments for a serious health condition.

32. For example, WPATH has explained that, like hormone therapy and other gender confirming treatments, "[t]he medical procedures attendant to gender affirming/confirming surgeries are not 'cosmetic' or 'elective' or 'for the mere convenience of the patient.' These reconstructive procedures are not optional in any meaningful sense but are understood to be medically necessary for the treatment of the diagnosed condition. In some cases, such surgery is the only effective treatment for the condition, and for some people genital surgery is essential and life-saving."

6

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

33. Similarly, in 2014, the federal Department of Health and Human Services Departmental Appeals Board confirmed that surgical treatment is safe and effective treatment for gender dysphoria. After reviewing expert medical testimony and published studies, the Appeals Board concluded that the Medicare program's then-existing exclusion of such treatment from coverage was "not reasonable."

34. These various components associated with transition—social, legal, and medical transition—do not change an individual's gender, as that is already established by gender identity, but instead bring the individual's appearance, legal identity, and sex related characteristics into greater typical alignment with the individual's gender identity and lived experience.

35. Plaintiff is the mother of a transgender son.

36. Plaintiff is protected by association with her son, who is a member of the protected class of sex.

37. Plaintiff's son has a diagnosis of gender dysphoria, is currently, and was at all relevant times to the allegations in this Complaint, under the care of various health care providers for gender dysphoria and gender transition related treatment.

38. Plaintiff is an employee of Defendant. As part of compensation for employment, Defendant provided its employees with health care coverage for such employees and their dependents through a privately funded plan administered by Cigna Healthcare NS-BUS. However, the aforementioned health care plan contains a categorical exclusion of all care related to gender dysphoria and gender reassignment. By categorically depriving transgender enrollees of coverage for the treatment of gender dysphoria—the clinically significant distress that can result from the dissonance between an individual's gender

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

identity and sex assigned at birth—Defendant unlawfully discriminated against Plaintiff by association with her son because of her son's membership in the protected class of sex.

39. By categorically denying all coverage related to gender dysphoria and gender reassignment Defendant denied equal compensation for equal work to Plaintiff.

40. The sweeping exclusion contained with Defendant's health care package denies coverage for health care, including counseling, hormone therapy, surgical care, and any other health care provided in relation to a person's transgender status and/or gender transition. This exclusion contravenes the well-established medical consensus that gender-confirming health care can be medically necessary and even lifesaving. Other plan enrollees who are not transgender or who are not associated with a transgender family member otherwise covered by the plan do not face a categorical exclusion barring coverage for health care that is medically necessary for them based on their sex and receive coverage for the same care that is denied to transgender enrollees.

41. Covered services under Defendant's health care plan include medically necessary pharmacy benefits, mental health benefits, and medical care such as surgical benefits at inpatient and outpatient facilities.

42. At all relevant times, Defendant's health care plan has contained a categorical exclusion of coverage for sex transition related health care.

43. Because the only people who require treatments related to gender confirming health care are transgender people, denying coverage for such health care necessarily discriminates against transgender people and/or the transgender dependents of the primary policy holder.

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

44. By denying Plaintiff coverage of expenses for her son's necessary medical treatment, Defendant is by definition discriminating against Plaintiff because of her association with her transgender son because of her son's membership in the protected class of sex.

45. As a result of the aforementioned exclusions in health care coverage, non-transgender enrollees receive coverage for medically necessary mental health, prescription drug, and surgical needs that, because of their sex, transgender employees or transgender dependents of employees of Defendant, such as Plaintiff, do not.

46. The medical consensus recognizes that discriminatory exclusions of gender confirming health care in health insurance plans have no basis in medical science. Preeminent medical and behavioral health organizations, such as the AMA and the APA, have called for an end to these exceptions.

47. In keeping with such medical consensus, Cigna, the third-party administrator of Defendant's health care plan, maintains a Corporate Medical Policy on Treatment of Gender Dysphoria that acknowledges the general medical necessity of this care, and further offers such coverage to employers such as Defendant, who are the ultimate determiners of what coverages are included in the healthcare plans offered to their employees.

48. Absent a categorical plan exclusion, claims for gender confirming care would be evaluated under the Cigna criteria for individual medical necessity and covered under the plan in the same manner as any other claims for medical, mental health, or pharmacy benefits.

49. Absent the sweeping exclusion of transgender related treatment maintained by Defendant in its health care plan, Plaintiff's medical needs for gender confirming care

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

while employed with Defendant would have been covered in the same manner as any other claim for medical, mental health, or pharmacy benefits as a non-transgender employee.

50. As a result of the sweeping exclusion of medically necessary health care coverage, Defendant's health care plan singles out employees, including Plaintiff, who are transgender, or who have transgender dependents, for unequal treatment by excluding medically necessary care for the treatment of gender dysphoria because of the enrolled member's sex and because such persons seek necessary medical treatment to change their sex to the one that matches their gender identity, and which is inconsistent with their sex assigned at birth.

51. Plaintiff has been denied coverage for her son's medically necessary gender confirming health care because of her son's sex and because of her familial association with her son, based on the categorical exclusion of gender confirming health care in Defendant's health care plan.

52. Plaintiff's son has been forced to either forego or delay medically necessary gender confirming health care and Plaintiff has incurred financial hardship without the financial protection afforded by coverage through Defendant's health care plan.

53. Plaintiff has also suffered emotional distress, stigmatization, humiliation, and a loss of dignity because of Defendant's targeted discrimination against transgender enrollees, which wrongly deems Plaintiff's and other transgender persons' health care needs as unworthy of equal coverage.

54. The targeted discrimination against transgender persons by Defendant violates Title VII and section 1557 of the ACA.

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

**CLAIMS FOR RELIEF**

**COUNT I**

**Violation of Title VII of the Civil Rights Act of 1964**

**42 U.S.C. § 2000e(f)**

**Associational Discrimination**

55. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 54 above.

56. Title VII provides that it is unlawful for an employer to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's sex.

57. Such prohibitions under Title VII also include discrimination against an individual because of their association with an individual who is a member a protected class; specific to Plaintiff's case is her association with her transgender son.

58. Under Title VII, discrimination on the basis of sex includes discrimination based on transgender status and/or gender identity.

59. Defendant is an employer with the meaning of Title VII and therefore subject to Title VII.

60. By offering a health plan to its employees with categorical exclusions for gender confirming care, Defendant has and continues to discriminate on the basis of sex against Plaintiff and other enrollees who require gender confirming care, or whose dependents require gender confirming care.

11

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

61. By knowingly and intentionally offering health insurance that denies coverage to Plaintiff on the basis of her association with her transgender son, Defendant harmed Plaintiff by: stigmatizing her; treating her as a secondary class compared to other non-transgender enrollees who have access to the same care for themselves or their non-transgender dependents; and causing Plaintiff and other transgender health plan participants mental and physical health complications due to their inability to access medically necessary health care.

62. By knowingly and intentionally offering health insurance that denies coverage to Plaintiff on the basis of her association with her transgender son, Defendant further harmed Plaintiff by permitting Plaintiff to be paid less than non-transgender employees and employees who do not have transgender dependents as Plaintiff was paying for insurance coverage she was unable to use, and thus denied compensation equal to the compensation received by non-transgender employees and employees who do not have transgender dependents.

63. By knowingly and intentionally offering a compensation package that denies fringe benefits to Plaintiff on the basis of Plaintiff's sex and/or her association with her transgender son, Defendant has intentionally violated Title VII, for which Plaintiff is entitled to compensatory damages, including but not limited to out-of-pocket damages, consequential damages, and attorney fees.

## COUNT II

### Violation of the Patient Protection and Affordable Care Act

### 42 U.S.C. § 18001 *et seq.*

12

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

64. Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 63 of this Complaint as though fully set forth herein.

65. Section 1557 of the ACA, 42 U.S.C. § 18116 provides, in relevant part, that "an individual shall not, on the ground prohibited under … title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*)"—which prohibits discrimination on the basis of sex"—"be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance."

66. Discrimination on the basis of sex characteristics, gender, nonconformity with sex stereotypes, transgender status, and gender transition are all encompassed by the prohibition of discrimination on the basis of sex under Section 1557.

67. Upon information and belief, Defendant receives federal financial assistance and or has contracts with the United States such that it is a "covered entity."

68. A covered entity, such as Defendant, cannot provide or administer health care insurance coverage which contains a categorical exclusion form coverage for gender confirming health care, or otherwise impose limitations or restrictions on coverage for specific health services related to gender transition if such limitation or restriction results in discrimination against a transgender individual; i.e. because of that individual's sex.

69. Because Defendant receives federal funding that flows to academic and research health programs or activities operated or supervised by Defendant, Plaintiff has a right under Section 1557 to receive health insurance through Defendant free from discrimination on the basis of sex, sex characteristics, gender, nonconformity with sex stereotypes, transgender status, or gender transition.

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

70. Defendant has discriminated against Plaintiff on the basis of sex in violation of Section 1557 and has thereby denied Plaintiff the full and equal participation in, benefits of, and right to be free from discrimination in a health program activity.

71. By categorically excluding all coverage for medically necessary treatment in conjunction with gender dysphoria and gender reassignment surgery, Defendant has drawn a classification that has unlawfully discriminated against Plaintiff based on her sex and her son's sex as an intended beneficiary of her employee health insurance plan in violation of Section 1557.

72. As a result of the exclusion, Plaintiff has suffered harm, including but not limited to financial harm.

73. By knowingly and intentionally offering health care coverage to Plaintiff that discriminated on the basis of sex, Defendant has intentionally violated the ACA, for which Plaintiff is entitled to compensatory damages, including but not limited to out-of-pocket damages, and consequential damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and against the Defendant on all claims as follows:

A. Enter a declaratory judgment that Defendants, including through enforcement of its health plan's categorical exclusion of treatment for gender dysphoria and/or gender confirming care, violated Plaintiff's rights under Title VII and the ACA, on the basis of Plaintiff's sex and/or her association with a protected class of persons;

14

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

B.  Preliminarily and permanently enjoin Defendant, their agents, employees, successors, and all others acting in concert with them from administering or offering health care coverage that categorically excludes coverage for gender confirming health care;

C.  Award compensatory and consequential damages, including but not limited to back pay, lost benefits, and front pay, in an amount that would fully compensate Plaintiff for her financial harm, emotional distress and suffering, embarrassment, humiliation, pain and anguish, violations of her dignity, and other damages caused by Defendant's conduct in violation of the laws of the United States;

D.  Award punitive damages for knowingly, intentionally, and willfully discriminating against Plaintiff in violation of the laws of the United States;

E.  Award pre- and post-judgment interest;

F.  Award Plaintiff her costs, expenses, and reasonable attorneys' fees incurred in this action pursuant to 42 U.S.C. § 1988 and any other applicable laws;

G.  Award other legal and equitable or injunctive relief as this Court deems just and appropriate;

H.  The declaratory relief requested in this action is also sought against Defendant's officers, agents, servants, employees, and attorneys, as well as any other persons who are in active concert or participation with them.

**<u>Demand for Jury Trial and Designation of Place of Trial</u>**

Plaintiff requests a trial by jury, in St. Louis, Missouri, on all counts and allegations of wrongful conduct alleged in this Complaint.


Respectfully Submitted,

LAW OFFICE OF MADELINE JOHNSON

15

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

/s/ *Madeline Johnson*
Mary Madeline Johnson, Mo. Bar # 57716
220 Main Street, Suite 201
Platte City, Missouri 64079
Telephone: (816) 607-1836
Facsimile:  (816) 817-5507
Email: mmjohnsonlaw@gmail.com

ATTORNEY FOR PLAINTIFF

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM

**2122-CC09346**

EEOC Form 161-B (11/2020)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: **Angelia Scott**<br>**220 Main St.**<br>**Suite 201**<br>**Platte City, MO 64079** | From: **St. Louis District Office**<br>**1222 Spruce Street**<br>**Room 8.100**<br>**Saint Louis, MO 63103** |

[ ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **560-2020-02295** | **Walter H. Harris, III,**<br>**Investigator** | **(314) 798-1943** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

DANA ENGELHARDT   Digitally signed by DANA ENGELHARDT Date: 2021.06.30 17:38:22 -05'00'   FOR   June 30, 2021

Enclosures(s)                                          **Lloyd J. Vasquez, Jr.,**                    *(Date Issued)*
                                                       **District Director**

cc:   **Amy L Blaisdell**                              **Madeline Johnson**
      **GREENSFELDER, HEMKER & GALE, P.C.**            **LAW OFFICE OF MADELINE JOHNSON**
      **10 S. Broadway, Suite 2000**                   **PO Box 1221**
      **ST. LOUIS UNIVERSITY HOSPITAL**                **Platte City, MO 64079**
      **3635 Vista Ave**
      **Saint Louis, MO 63110**

Enclosure with EEOC
Form 161-B (11/2020)

**INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC**

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or
record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was
issued** to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office.  If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be
made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Electronically Filed - City of St. Louis - September 23, 2021 - 10:00 AM



# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MICHAEL FRANCIS STELZER | Case Number:  2122-CC09346 |
| Plaintiff/Petitioner:<br>ANGELIA SCOTT<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>MARY MADELINE JOHNSON<br>4051 BROADWAY<br>SUITE 4<br>KANSAS CITY, MO  64111 |
| Defendant/Respondent:<br> ST LOUIS UNIVERSITY HOSPITAL | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:  ST LOUIS UNIVERSITY HOSPITAL**
**Alias:**

**1201 S. GRAND BOULEVARD**
**ST. LOUIS, MO  63104**

**SHERIFF'S FEE PAID**

*COURT SEAL OF*

*CITY OF ST LOUIS*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**September 23, 2021**

_____
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____    _____
Printed Name of Sheriff or Server                                          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____    _____
                                            Date                                            Notary Public

| | | |
|---|---|---|
| **Sheriff's Fees, if applicable** | | |
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | **$_____** | |

 A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.