IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ANGELIA SCOTT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-cv-01270-AGF |
| | ) |
| ST. LOUIS UNIVERSITY HOSPITAL | ) REQUEST FOR JURY TRIAL |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

COMES NOW Plaintiff Angelia Scott ("Plaintiff") and for her Memorandum in Opposition to Defendant's Motion to Dismiss states as follows:

**I.      Introduction**

Plaintiff Angelia Scott is a former employee of Defendant. As part of her pay, she received the benefit of participation in an employer sponsored welfare benefit plan. There is no dispute the plan excludes coverage for sex reassignment surgery and certain other sex transition related services. The plan in question discriminates against transgender persons by its own terms through its exclusion of health care coverage related to sex transition. Thus, the plan discriminates not only against transgender participants, but also against non-transgender participants who fail to adhere to traditional sex stereotypes by supporting a transgender dependent in sex transition. As described below, Plaintiff has successfully asserted claims of associational discrimination because her own sex and failure to conform to traditional sex stereotypes is directly implicated through Defendant's discriminatory policy.

Defendant also mistakenly asserts preemption of Plaintiff's Title VII claim by the Employee Retirement Income Security Act of 1974 codified at 29 U.S.C. §§ 1001 *et seq*.

1

(ERISA). ERISA cannot, because of its own provisions, preempt Plaintiff's claims under Title VII or the ACA because ERISA preemption applies only to state laws and not the other laws of the United States. Defendant tacitly admits this point of law by failing to challenge Plaintiff's ACA claim under ERISA preemption as well as the Title VII claim. Defendant's Motion to Dismiss should be denied.

## II.      Procedural History

Plaintiff filed her claims for relief under Title VII of the Civil Rights Act of 1964 codified at 42 U.S.C. § 2000e *et seq.* (Title VII) and the Patient Protection and Affordable Care Act codified at 42 U.S.C. § 18001 *et seq.* (ACA), both claims under federal law, in the Circuit Court for St. Louis County, Missouri on September 23, 2021, against Defendant. Defendant removed the case to this Court on the basis of federal question jurisdiction on October 22, 2021. Plaintiff does not dispute the removal to this Court.

## III.     Standard of Review

Plaintiff agrees the standard as outlined by Defendant is correct.

## IV.     Argument

### a. ERISA does not preempt other claims under United States Law.

Plaintiff first addresses Defendant's argument for ERISA preemption. Defendant's assertion of preemption is mistaken and is dealt with simply and directly through examination of ERISA's own provisions. 29 U.S.C. § 1144 addresses specifically when ERISA preempts other laws and when it does not. 29 U.S.C. § 1144(d) provides: "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States … or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). Title VII and the ACA are laws of the United States and are thus specifically not preempted by ERISA. ERISA

cannot, because of the limitations within its own provisions, preempt Plaintiff's claims under Title VII or the ACA. If § 1144(d) alone is not convincing, one need only look next to another of ERISA's own provisions at 29 U.S.C. § 1144(a), which provides, "the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in … this title." 29 U.S.C. § 1144(a). The specific terms of ERISA provide that it preempts only state laws impacting an ERISA covered employee benefit plan. *See, National Elevator Industry, Inc. v. Calhoon,* 957 F.2d 1555 (10th Cir. 1992). Three requirements must be met to satisfy ERISA's preemption statute: 1) there must be a state law, 2) there must be an employee benefit plan, and 3) the state law must relate to the employee benefit plan. *Id.,* at 1557. 29 U.S.C. § 1144(d) carves out an exception to preemption for federal laws. *Id.* In the present case, there is no state law implicated and Defendant's argument for preemption under ERISA fails.

Defendant cites *Slice v. Sons of Norway,* 34 F.3d 630, 631-32 (8th Cir. 1994) in support of its argument for ERISA preemption of Plaintiff's Title VII claim. Defendant's reliance on *Slice* is misplaced. The *Slice* case dealt with a Plaintiff's state law claims which arose out of conduct governed by ERISA. *Id.* The *Slice* court was not addressing preemption of other federal claims by ERISA. Although the opinion in *Slice* includes a statement that, "ERISA's civil enforcement provisions … provide the exclusive remedy for participants or beneficiaries seeking to enforce their rights under an ERISA plan," the *Slice* court makes its statement in the context of state law claims and the enforcement of rights under ERISA specifically. *Id.* There is no statement from the court that ERISA preempts or is intended to preempt other federal law, which would be entirely inapposite to 29 U.S.C. § 1144(d).

In addition to ERISA's own provisions specifically excepting other federal statutes from ERISA preemption, Plaintiff's claims cannot be shoehorned into ERISA no matter how much Defendant would like to do so. Defendant's assertion of ERISA preemption as to Plaintiff's federal law claims is merely an attempt to bootstrap Plaintiff's claims into a law where Plaintiff has no cause of action. ERISA provides a participant or beneficiary may bring a claim under ERISA to recover benefits due to the claimant under the terms of the plan, to enforce a claimant's rights under the plan, or to clarify a claimant's rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). *See also, Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41 (1987). By ERISA's own provisions, the terms of the plan are part of the governing law of an ERISA claim. 29 U.S.C. § 1132(a)(1)(B). There is no dispute the terms of the plan in the present case exclude coverage of health care related to sex transition. Therefore, there is nothing due to Plaintiff under an ERISA governed plan that has been unpaid, there is no right for Plaintiff to enforce under the plan, and Plaintiff has no right to a future benefit under the plan to be clarified. Plaintiff simply has no right which may be enforced under the plan and ERISA has no application to the present case. Defendant's assertion of ERISA preemption is improper and its Motion to Dismiss on the grounds of ERISA preemption should be denied.

> **b. Plaintiff has appropriately pled a claim of associational discrimination that implicates her own sex as part of the discrimination.**

Plaintiff has clearly pled a cognizable claim of associational discrimination which is tied to her own sex. Plaintiff in the present case is the mother of a transgender child who refuses to impose traditional sex stereotypes upon her transgender child. Title VII prohibits discrimination in employment because of a person's sex because they are transgender. *Bostock v. Clayton County, Georgia,* ____U.S.____ , 140 S.Ct. 1731, 207 L.Ed. 218 (2020). Title VII directly

prohibits discrimination against an individual because of their sex with respect to their compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2. Plaintiff was discriminated against in her compensation by Defendant when she paid for a health plan that was unusable by Plaintiff both by virtue of her having a transgender son, and by virtue of the fact she is a non-transgender person who does not adhere to traditional sex stereotypes. In particular, Plaintiff is a non-transgender person who does not comport with the sex-based stereotype that a person assigned female at birth must adhere to and comport with feminine stereotypical behaviors and appearances and does not impose this stereotype upon her child. Defendant, through its discriminatory policy exclusion, impeded Plaintiff's access to health care causing Plaintiff out of pocket expenses, which reduced Plaintiff's pay. Defendant's policy exclusion impacts Plaintiff specifically because of her refusal to impose traditional sex stereotypes upon her transgender child.

     Defendant asserts Plaintiff has failed to demonstrate she is within the class of Plaintiffs whom Congress has authorized to sue under the statute. *See,* Defendant's Memorandum in Support of Defendant's Motion to Dismiss, p.5, ¶1. Defendant's assertion is incorrect. Plaintiff was discriminated against in her employment by Defendant both by virtue of her having a transgender son (association), and by virtue of the fact she is herself a non-transgender person who does not adhere to traditional sex stereotypes by not insisting her child adhere to those stereotypes (her own sex and failure to comport with traditional stereotypes). In particular, Plaintiff does not comport with the traditional sex-based stereotype that a person assigned female at birth must adhere to and comport with feminine stereotypical behaviors and appearances. By supporting her transgender son in transition instead of enforcing traditional sex stereotypes, Plaintiff herself is guilty of not comporting with the traditional sex stereotype that a non-

5

transgender woman should comply with and only support traditional sex stereotypes for persons assigned the female sex at birth.

In claims such as Plaintiff's where the claim is brought because her transgender child is excluded from benefits, only a supporting parent participant who does not comport with the aforementioned sex stereotype will be impacted precisely because of their failure to comport with traditional sex stereotypes. A parent, whether male or female, who does comply with the traditional sex stereotype that a person born female (male) should behave and appear in accord with feminine (masculine) stereotypes, will not support their child's sex change and would neither need nor seek such a benefit under Defendant's discriminatory health plan. Therefore, a Plaintiff who challenges Defendant's health plan is directly controverting the traditional sex stereotype the plan itself implicitly imposes upon Plaintiff, i.e. a child assigned male (female) at birth should adhere to traditional sex stereotypes of a masculine (feminine) person and a parent of a gender variant child who is not themselves gender variant, should likewise enforce traditional sex stereotypes within their families. Thus, Plaintiff's own sex is directly impacted by Defendant's discrimination as a woman who does not herself comport with traditional sex stereotypes.

Discriminating against a person for their failure to conform to traditional sex stereotypes is clearly a form of sex discrimination. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251 (1989). Defendant's patently discriminatory health care plan excludes Plaintiff from coverage for having a transgender son and because of Plaintiff's failure to comport with traditional sex stereotypes. *See also, Bostock,* ____U.S.____ , 140 S.Ct. 1731, 207 L.Ed. 218 (2020).

Defendant relies heavily on the *Tovar* case for its position that Plaintiff is unauthorized to sue. Defendant's Memorandum in Support of Defendant's Motion to Dismiss, p.5, ¶1*,* (citing

*Tovar v. Essentia Health,* 857 F.3d 771, 774 (8th Cir. 2017) for the notion a mother may not bring suit on behalf of a transgender child under Title VII because she is allegedly not discriminated against because of her sex). It is important for the analysis of this case that *Tovar* (2017) was decided before *Bostock* (2020)*. Tovar* did not foreclose the possibility of an associational discrimination claim, rather, *Tovar* left open the possibility that a plaintiff may bring a claim of associational discrimination where the Plaintiff's own protected characteristic is impacted by the associational discrimination. *Tovar,* at 776. *Tovar,* which was decided three years before *Bostock*, was decided at a time when the law was unclear regarding Title VII's protection of transgender persons under the protected class of "sex." *Bostock* clarified that such protections do include transgender individuals because it is impossible to separate consideration of a transgender person's sex when discriminating against such a person. *Bostock,* 140 S.Ct., at 1741. The *Tovar* court, not having the benefit of the *Bostock* decision, mistakenly concluded, "there is no plausible argument that Essentia's failure to cover gender reassignment treatment for Tovar's son amounted to discrimination against Tovar on the basis of her own sex." *Tovar,* at 776*.* When the present case is viewed in the light of *Bostock's* holding, the discriminatory impact to Plaintiff because of Plaintiff's sex and her failure to comport with traditional sex stereotypes becomes clear. Because the sex of a transgender person cannot be separated from the decision to discriminate against a transgender person, Likewise, Plaintiff's own sex as compared to her transgender child's sex is inseparable from the impact of Defendant's decision to offer a discriminatory health care plan. Implicit within the discriminatory exclusions in Defendant's health care plan is the traditional sex stereotype that a person born female should not change their sex to male. Defendant, through its discriminatory health care plan, imposes this stereotype on Plaintiff Mother, who does not adhere to this traditional sex stereotype, and supports her

transgender child changing their sex. Plaintiff is directly discriminated against because of her own failure to comport with traditional sex stereotypes in her support and encouragement of her transgender child. Plaintiff's sex as a non-transgender person and her own failure to comport with traditional sex stereotypes cannot be divorced from the equation for the same reasons the *Bostock* court held sex cannot be divorced from a basic Title VII sex discrimination claim brought by a transgender person, who by their very behavior does not comport with traditional sex stereotypes. *See, Bostock,* 140 S.Ct., at 1742.

The true nature of Defendant's discrimination comes to light when someone, whether participant or beneficiary, would use the implicated excluded benefit were it available. Assuming, *arguendo,* that Plaintiff did adhere to traditional sex stereotypes, there would be no cause of action because Plaintiff's compliance with traditional sex stereotypes raises no need for such benefit. A non-transgender participant and a non-supportive participant with a transgender dependent have no reason to raise a claim of discrimination as they are unimpacted by the discriminatory exclusion of benefits for transition related health care. Only participants and beneficiaries who are gender non-conforming, i.e. do not comport with traditional sex stereotypes, and who are in need of such a benefit, are impacted.

Implicit within Defendant's policy is the traditional sex stereotype that Plaintiff, the non-transgender mother of a transgender child, should not support her child by undertaking medical interventions to assist her child in changing their sex. Plaintiff Mother is denied coverage for her child because she herself has a transgender child, and, although not transgender, Plaintiff Mother fails to comport with traditional sex stereotypes that she should insist her child born female not change their sex. Plaintiff is denied medical coverage for her family because of her own failure to adhere to traditional feminine stereotypes. Plaintiff's transgender son and Plaintiff's breaking

8

of sex stereotypes to support her transgender child are inextricable from the present case. Plaintiff suffers associational discrimination because of her own sex and because of her association with and support of her transgender child.

For the foregoing reasons, Plaintiff's claim under Title VII passes muster as does her claim under the ACA because Plaintiff's own sex and her failure to comport with traditional sex stereotypes are necessarily implicated.

### c. Plaintiff has appropriately pled a claim under the ACA

Defendant alleges Plaintiff's claim under the ACA is deficient for the same reasons it alleges Plaintiff's claim under Title VII is deficient. For all of the same reasons as stated above, Plaintiff has established a cognizable claim under Title IX, the statute predicate to a claim of sex discrimination under the ACA. Plaintiff has already addressed those same allegations above and will not re-hash the same arguments here for the sake of efficiency.

### V. Any perceived deficiency in Plaintiff's Complaint is easily fixed by amending the pleading

In the event the Court finds Plaintiff's pleading to be deficient for the purposes of establishing Plaintiff's sex is directly implicated by Defendant's associational discrimination against her because of her transgender son and Plaintiff's own failure to comport with traditional sex stereotypes, the defect is easily cured by an amended pleading. Plaintiff would need only add a paragraph or two demonstrating how her sex is implicated through sex stereotyping. The Federal Rules of Civil Procedure provide the Court should freely give leave to amend pleadings when justice requires. Fed. R. Civ. P. 15(a)(2). Defendant will not be prejudiced by giving Plaintiff leave to amend her petition because all facts related to the discrimination are known to all parties; namely, Defendant's health care policy which it offers to its employees, explicitly

9

excludes coverage of any health care related to sex transition and Plaintiff alleges the policy discriminates against Plaintiff by denying coverage for her family because of Plaintiff's and her son's sex.

VI. **Conclusion**

Plaintiff has clearly stated cognizable claims under both Title VII and the ACA and ERISA does not preempt Plaintiff's claims. The logic applied in *Tovar,* which was decided prior to the United States Supreme Court's decision in *Bostock,* no longer applies to the present case in light of *Bostock's* holding. It is clear Plaintiff's claims of associational discrimination, which are inextricably bound to her association with her transgender son, are likewise inextricably tied to Plaintiff's own sex through the impermissible sex stereotyping imposed upon Plaintiff by Defendant's health care exclusions. Indeed, it is not possible to separate the two. Defendant's Motion to Dismiss should be denied.

Should this Court find Plaintiff's pleading insufficiently states her claims clearly tying Defendant's discriminatory policy exclusion to her own sex, Plaintiff requests this Court grant her leave to amend her Complaint for Damages to clarify the direct impact to her own sex.

WHEREFORE, Plaintiff requests this Court deny Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, grant Plaintiff leave to amend her Complaint for Damages should the Court deem it necessary, and for any further relief this Court deems appropriate.

Respectfully Submitted,

LAW OFFICE OF MADELINE JOHNSON

/s/ *Madeline Johnson*
Mary Madeline Johnson, Mo. Bar # 57716
220 Main Street, Suite 201
Platte City, Missouri 64079

        Telephone: (816) 607-1836
        Facsimile:  (816) 817-5507
        Email: mmjohnsonlaw@gmail.com

        ATTORNEY FOR PLAINTIFF

**Certificate**

I hereby certify that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served via email on:

Amy L. Blaisdell, MO Bar #51068
Lauren A. Daming, MO Bar #66472
10 S. Broadway, Suite 2000
St. Louis, MO 63102-1747
Telephone: 314/241-9090
Facsimile: 314/241-8624
apb@greensfelder.com
ldaming@greensfelder.com
***Attorneys for Defendant***

        /s/ Madeline Johnson
        Madeline Johnson