## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| ANGELIA SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-cv-01270-AGF |
| | ) |
| ST. LOUIS UNIVERSITY HOSPITAL, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant St. Louis University Hospital's Motion to Dismiss (Doc. No. 15) Plaintiff Angelia Scott's complaint. (Doc. No. 1-1). Plaintiff alleges Defendant violated Title VII of the Civil Rights Act (Count I) and the Patient Protection and Affordable Care Act (Count II) when it declined to provide health insurance coverage benefits that cover the cost of treatment for her son's gender dysphoria. For the reasons set forth below, the Court will grant in part and deny in part the motion.

### BACKGROUND

Taken as true for the purpose of this motion, Plaintiff alleges the following facts. Plaintiff was an employee of Defendant. As a part of her employee compensation, Defendant provides Plaintiff and her dependents with health insurance coverage benefits through a privately funded plan administered by Cigna Healthcare. Plaintiff's benefits

plan (the "Plan") includes a categorical exclusion of all care related to gender dysphoria and gender reassignment.  Plaintiff's son is transgender and was diagnosed with gender dysphoria.  Plaintiff sought treatment for her son's gender dysphoria but was denied coverage for the gender confirming health care due to the Plan's categorical exclusion.  Plaintiff's son was forced to forgo or delay the gender confirming procedures, and Plaintiff incurred financial hardship, including out-of-pocket damages.  (Doc. No. 1-1 at ¶ 63).

Based on these allegations, Plaintiff filed a charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 28, 2020.  Plaintiff subsequently obtained a Notice of Right to Sue from the EEOC on June 30, 2021.  On October 22, 2021, Plaintiff filed her complaint in the Circuit Court of the City of St. Louis, Missouri raising one claim under Title VII of the Civil Rights Act (Count I) and one claim under the Patient Protection and Affordable Care Act ("ACA") (Count II).  Defendant subsequently removed the matter to this Court and filed its motion to dismiss.  Defendant argues the complaint should be dismissed because Plaintiff's claims are both preempted by ERISA or, in the alternative, because Plaintiff does not fall within the class of plaintiffs who Congress authorized to sue pursuant to Title VII or the ACA.  Plaintiff responded in opposition.  The motion is fully briefed and ready for disposition.

## DISCUSSION

"To survive a 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

I. **ERISA Preemption**

Defendant first argues Plaintiff's complaint must be dismissed because her plan is governed by ERISA, and as such ERISA is the exclusive remedy to enforce her rights. ERISA is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, *see* ERISA§ 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoted case omitted). Section 1144 expressly preempts state laws related to employee benefit plans:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

3

29 U.S.C. § 1144(a).

Defendant claims that ERISA likewise preempts Plaintiff's federal law claims. However, ERISA expressly excludes federal laws from its preemption provisions: "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law."[1]  29 U.S.C. § 1144(d). *See also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020), *cert. granted in part*, 141 S. Ct. 2882 (2021), and *cert. dismissed sub nom. CVS Pharmacy, Inc. v. Doe, One*, 142 S. Ct. 480 (2021) (allowing plaintiff to assert a claim of sex discrimination in violation of § 1557 of the ACA for discriminatory benefits provided by a group health plan governed by ERISA).

Defendant relies on *Slice v. Sons of Norway* to support its proposition that ERISA is Plaintiff's exclusive remedy.  34 F.3d 630, 631-32 (8th Cir. 1994).  Slice, a retiree, brought a claim under ERISA after his monthly pension benefits were decreased, alleging he was entitled to relief pursuant to two sections of ERISA: 29 U.S.C. § 1132(a)(3)(B) and 29 U.S.C. § 1104(a).  Slice also alleged a claim for equitable estoppel under federal law.  The Eighth Circuit determined Slice had not stated a claim pursuant to ERISA, noting "ERISA's civil enforcement provisions, set forth in 29 U.S.C. § 1132(a), provide the exclusive remedy for participants or beneficiaries seeking to enforce their rights under

---

[1] Section 1031 repeals the Welfare and Pension Plans Disclosure Act.  Section 1137 provides that no employee of the Department of Labor or the Department of Treasury may decline to administer or enforce ERISA with respect to certain plans.

4

an ERISA plan." *Id*. at 631–32.  Defendant claims that, pursuant to *Slice*, Plaintiff's claims under Title VII and the ACA must be dismissed because ERISA's civil enforcement provisions are Plaintiff's exclusive remedy.

Defendant misinterprets *Slice*.  *Slice* dismissed the plaintiff's ERISA claims, finding ERISA's civil enforcement provisions are the exclusive remedy to enforce rights pursuant to that statute.  The Eighth Circuit did not hold that ERISA preempted Slice's federal equitable estoppel claim; instead, the court found Slice had failed to state a claim. *Slice,* 34 F.3d at 635.  Here, Plaintiff has not alleged a claim pursuant to ERISA, and is not "seeking to enforce [her] rights under an ERISA plan." *Id*.  Instead, Plaintiff admits the Plan expressly excludes coverage for sex transition and she has no rights to enforce under the Plan. (Doc. No. 19 at 4).  ERISA does not preempt other federal law claims, including Plaintiff's claims pursuant to Title VII and the ACA.  *See CVS Pharmacy, Inc.*, 982 F.3d at 1210.

## II.     Title VII

Defendant next argues Plaintiff's Title VII claim should be dismissed because Plaintiff is not authorized to sue under Title VII.  Defendant claims Plaintiff has not alleged that it discriminated against her on the basis of her sex—only that it discriminated on the basis of her son's sex.  As such, Defendant argues Plaintiff is not within the zone of interests protected by Title VII.

"[A] plaintiff who seeks relief for violation of a statute must 'fall[ ] within the class of plaintiffs whom Congress has authorized to sue' under that statute." *Thole v. U.S. Bank Nat'l Ass'n*, 873 F.3d 617, 628 (8th Cir. 2017) (second alteration in original)

5

(quoting *Tovar v. Essentia Health*, 857 F.3d 771, 774 (8th Cir. 2017) ("*Tovar I*")).  This requirement, sometimes inaptly referred to as "prudential standing," arises, in part, from "the general prohibition on a litigant's raising another person's legal rights . . . and the requirement that a plaintiff's complaint fall within the zone of interest protected by the law invoked."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).  An assessment of the "zone of interests" to which a given statute is directed may involve reference to "statement[s] of the statute's purposes."  *See id.* at 131 (reviewing statute's statement of purposes in resolving zone-of-interests issue).  If a plaintiff does not fall within the class of those authorized to sue, the cause of action may be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

    Title VII makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin…."  42 U.S.C. § 2002e-2(a).  "Health insurance and other fringe benefits are 'compensation, terms, conditions, or privileges of employment.'"  *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 682–83 (1983) (quoting 42 U.S.C. § 2002e-2(a)).  Defendant argues Plaintiff has not stated a claim pursuant to Title VII because she has not alleged that it discriminated against her with respect to her own sex.

    Plaintiff contends the Plan discriminated against her sex in violation of Title VII in two ways.  First, Plaintiff claims she was denied benefits due to her relationship with her transgender son.  Second, Plaintiff claims she was denied her benefits because she does

6

not comply with traditional gender stereotypes, as she is seeking gender confirming treatment for her son.

### A. Relational discrimination

Plaintiff first claims that she was discriminated against due to her relationship with her transgender son. She asserts that if her son was assigned male at birth, he would not require gender confirming treatment. As such, the policy discriminates against her son on the basis of his sex by categorically excluding gender confirming treatment. Defendant argues Title VII only creates a cause of action for discrimination "because of such individual's . . . sex," and Plaintiff has not alleged that she was discriminated against based on her own sex.

Courts "have broadly construed Title VII to protect individuals who are the victims of discriminatory animus towards third persons with whom the individuals associate." *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999) (compiling cases). These claims can proceed because the employment practices treat the plaintiff "in a manner which but for that person's [protected characteristic] would be different . . . . For example, a plan that provided complete hospitalization coverage for the spouses of female employees but did not cover spouses of male employees when they had broken bones would violate Title VII by discriminating against male employees." *Newport News Shipbuilding* at 682–83. *See also Tetro*, 173 F.3d at 994 ("A white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child.").

7

Defendant argues that Plaintiff's claim differs from other claims of discrimination based on association because her protected characteristic is irrelevant—if Plaintiff were a different sex, the outcome would be the same. There is Eighth Circuit authority directly on point. In *Tovar I*, the Eighth Circuit considered whether a mother was authorized to sue her employer for sex discrimination pursuant to Title VII where her employer-provided health insurance did not cover transition services for her transgender son. 857 F.3d at 774. Tovar was a nurse practitioner employed by defendant Essentia whose benefits included health insurance coverage. The plan categorically excluded coverage of services for gender reassignment. Tovar's son, a beneficiary of the plan, was diagnosed with gender dysphoria and health professionals determined her son required medications and gender reassignment surgery. Tovar sought coverage under her plan, but coverage was denied due to the categorical exclusion. Tovar alleged a claim against Essentia for sex discrimination in violation of Title VII. The district court dismissed the Title VII claim and Tovar appealed.

> The Eighth Circuit upheld the decision of the district court, finding
>
> the plain text of Title VII contravenes Tovar's argument that she is within the class of plaintiffs for whom Congress authorized that cause of action….[T]he statute prohibits employers from discriminating against employees on the basis of their protected characteristics. Tovar has not alleged that she was discriminated against on the basis of her own sex; rather, she alleges that she was discriminated against because of her son's sex. By its terms the protections of Title VII do not extend to such discrimination.

*Tovar I* at 775.

Plaintiff argues that *Tovar I* was overruled by the Supreme Court in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, (2020).  In *Bostock*, the Supreme Court considered whether three plaintiffs who alleged they had been fired because of their sexuality or gender identity had stated claims pursuant to Title VII.  Relevant to this case, plaintiff Aimee Stephens alleged she was fired because of her transgender status.  When she was hired, Stephens presented as male.  She was diagnosed with gender dysphoria and decided to begin living as a woman.  Stephens informed her employer of her decision and was fired.  The Supreme Court concluded that Stephens had stated a claim pursuant to Title VII "because to discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex."  *Id*. at 1731.

Plaintiff claims *Tovar I* is no longer good law in light of *Bostock*, as the case clarified that Title VII protections extend to discrimination based on transgender identity.  However, the Eighth Circuit assumed that sex-based discrimination pursuant to Title VII included protection for transgender individuals in *Tovar I*.  857 F.3d at 775.  The question in *Tovar* was whether a plaintiff could bring a claim for discrimination against a third party when their own protected characteristics were not implicated.  The Supreme Court did not address this question in *Bostock*—where all three plaintiffs were allegedly fired based on their own protected characteristic.  As such, Bostock did not overrule *Tovar I*, which remains binding authority on this Court.  Under *Tovar I*, Plaintiff cannot state a claim pursuant to Title VII for discrimination against her son based on his gender identity.

### B. Sex stereotype theory

Plaintiff further claims that she has been discriminated against on the basis of her sex because "she is a non-transgender person who does not comport with the sex-based stereotype that a person assigned female at birth must adhere to and comport with feminine stereotypical behaviors and appearances and does not impose this stereotype upon her child." (Doc. No. 19 at 5). Plaintiff claims this amounted to sex stereotype discrimination in violation of Title VII, as described in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989).

In *Price Waterhouse*, plaintiff Ann Hopkins alleged her employer discriminated against her based on her sex when she was passed over for a promotion because she was overly masculine. The Supreme Court determined this constituted gender discrimination, as stereotypical beliefs about how a person should act based on their gender violate Title VII if they lead to an adverse employment decision. *Id*. at 250 ("In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."). Sex stereotyping is discrimination on the basis of sex; if the court "asked the employer at the moment of the decision what its reasons were and if [it] received a truthful response, one of those reasons would be that the applicant or employee was a woman." *Id*. at 250.

Plaintiff has not shown that the Plan engages in discrimination based on sex stereotyping. Sex stereotyping, like other forms of sex discrimination, violates Title VII "*because the discrimination would not occur but for the victim's sex.*" *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1041 (8th Cir. 2010) (quoting *Smith v.*

10

*City of Salem, Ohio*, 378 F.3d 566, 574 (6th Cir. 2004)) (emphasis in original). Although Plaintiff's son's sex may be relevant to the benefits provided by the Plan, Plaintiff's own sex and her attitudes about her son's sex are not. Plaintiff has not shown that she is within the class of plaintiffs authorized to sue pursuant to Title VII. As such, the Court must dismiss Count I for failure to state a claim.

### III.   ACA Claim

Defendant next argues Plaintiff has failed to state a claim pursuant to the section 1557 of the ACA because she is not within the intended class of plaintiffs who may bring suit. Section 1557 incorporates Title IX to prohibit discrimination on the basis of sex in healthcare:

> [A]n individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . . The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C.A. § 18116.

Title IX, in turn, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681.

To state a claim under Section 1557, Plaintiff must allege: (1) Defendant is a health program that receives federal financial assistance; (2) Plaintiff was excluded from

11

participation in or denied the benefit of the program; and (3) the exclusion was on a ground prohibited by Title IX, that is—it was on the basis of sex. *Id*. *See also C.P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, 536 F. Supp. 3d 791, 796 (W.D. Wash. 2021).  Defendant contends Plaintiff has failed to meet the second and third requirements.

**A. Denial of a benefit**

Defendant first claims that Plaintiff has not shown she was denied participation in or the benefits of the Plan.  Instead, Defendant claims Plaintiff's allegations center on her son's injuries.  However, Plaintiff claims she suffered "out-of-pocket damages" as a result of the Plan denying coverage to her son.  (Doc. No. 1-1 at ¶¶ 63, 73).  Out-of-pocket expenses used to cover the costs of treatment are Plaintiff's injuries, not her son's. *See Tovar I*, 857 F.3d at 778–79.  As such, Plaintiff has adequately alleged that she was denied a benefit of the Plan.

**B. Discrimination on the Basis of Sex**

Defendant next argues that Plaintiff's claim is not within the zone of interest of the ACA for the same reason it does not fall into the zone of interest of Title VII: the Plan does not discriminate against Plaintiff on the basis of her sex, only against her son. Defendant claims the Minnesota district court's decision on remand in *Tovar* supports its position.  *Tovar v. Essentia Health*, 342 F. Supp. 3d 947 (D. Minn. 2018) ("*Tovar II*"). First, the Court notes that the Eighth Circuit reversed the district court's dismissal of Tovar's ACA claim and declined to determine whether Tovar fell within the class of plaintiffs authorized to bring a claim for discrimination in violation of the ACA.  *Tovar I*,

12

857 F.3d at 778–79.  On remand, the district court determined Tovar lacked Article III standing to bring a claim pursuant to the ACA because she had suffered no cognizable injury in fact.  *Tovar II*, 342 F. Supp. 3d at 955-56.  Neither *Tovar I* nor *Tovar II* determine whether a plaintiff may state a claim pursuant to the ACA based on discrimination against a third party.

Title IX, and by extension the ACA, is a much broader prohibition on discrimination than Title VII.  The Eighth Circuit in *Tovar I* relied on the language in Title VII that prohibits discrimination "against any individual . . . because of <u>such individual's</u> race, color, religion, sex, or national origin."  *Tovar I*, 857 F.3d at 775 (quoting 42 U.S.C. § 2000e-1(a)) (emphasis in original).  But the language of Title IX has no such limitations.  Rather, it states "[n]o person in the United States shall, on the basis of sex . . . be subjected to discrimination . . . ."  20 U.S.C.A. § 1681; *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005).

In *Jackson*, the Supreme Court determined that plaintiff Robert Jackson could bring a claim for sex discrimination pursuant to Title IX.  Jackson was a physical education teacher and girls' basketball coach in the Birmingham, Alabama public school system.  He discovered that the girls' team did not receive equal funding or resources.  Jackson complained to his superiors about the unequal treatment, but the school did nothing to remedy the situation.  After that point, he began receiving negative work evaluations and was removed as the girls' basketball coach.  The Supreme Court found Jackson had stated a claim for discrimination on the basis of sex pursuant to Title IX.  *Id.* at 176-77.

13

In making its determination, the Supreme Court contrasted Title VII and Title IX: "Title IX's cause of action is implied, while Title VII's is express. Title IX is a broadly written general prohibition on discrimination, followed by specific, narrow exceptions to that broad prohibition. By contrast, Title VII spells out in greater detail the conduct that constitutes discrimination in violation of that statute." *Jackson.*, 544 U.S. at 175 (internal citations omitted). The court concluded "that when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Id*. at 174.[2]

Likewise, Plaintiff contends that the Plan discriminates against her on the basis of her son's sex. She alleges that the Plan provides less comprehensive coverage to her son because he is transgender, and she has suffered damages including out of pocket expenses. Although the Supreme Court has yet to consider whether discrimination against a person for being transgender violates Title IX, "[i]t would be logically inconsistent with *Bostock* to find that Title IX permits discrimination for being transgender." *C.P. by & through Pritchard*, 536 F. Supp. 3d at 796. *See also Tovar II*, 342 F. Supp. 3d at 953; *Boyden v. Conlin*, 341 F. Supp. 3d 979, 997 (W.D. Wis. 2018).

---

[2]     Although Jackson alleged a claim for retaliation, the Court concludes that the same standard applies to Plaintiff's claim for discrimination on the basis of sex. Title IX does not include a provision specifically prohibiting retaliation. Instead, "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Id*. at 173-74.

As Plaintiff alleges the Plan discriminates on the basis of sex, the Court concludes that Plaintiff has stated a claim for discrimination in violation of the ACA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.  (Doc. No. 15).  The motion is **GRANTED** as to Count I.  The motion is otherwise **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 25th day of April, 2022.